NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4491
_____

IN RE: DIET DRUGS (PHENTERMINE/FENFLURAMINE/DEXFENFLURAMINE)
PRODUCTS LIABILITY LITIGATION


Sydney Davis,
                                        Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 99-cv-20593; MDL No. 2-16-md-1203)
District Judges:  Hon. Harvey Bartle, III
_____

Submitted Under Third Circuit LAR 34.1(a)
December 19, 2013

Before:  JORDAN, VANASKIE and GREENBERG, *Circuit Judges*.

(Filed: January 6, 2014)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Sydney Davis appeals an order of the United States District Court for the Eastern District of Pennsylvania denying her recovery under the terms of the Diet Drug Nationwide Class Action Settlement Agreement ("Settlement Agreement").  We will affirm.

## I.    Background

This appeal relates to the settlement of multi-district products liability litigation regarding the diet drugs Pondimin and Redux, previously sold by American Home Products ("AHP").  *See In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d 179, 181 (3d Cir. 2008).  In November 1999, Wyeth, the successor-in-interest to AHP, joined plaintiffs' representatives in the Settlement Agreement, which the District Court approved in August 2000.  *See id.* at 181.  Under the terms of the Settlement Agreement, Wyeth was required to contribute funds for the payment of claims.  *See id.* at 180.  The AHP Settlement Trust (the "Trust"), acting through its trustees and claims administrator, administers and reviews claims to determine the benefits, if any, that a class member is qualified to receive under the terms defined in the Settlement Agreement.  *See id.*[1]

Davis, a class member, sought compensation benefits under the Settlement Agreement.  She based her claim on an echocardiogram performed in 2002 after she had ingested Pondimin for six months.  Having reviewed the echocardiogram, her cardiologist, Dr. Mark Burton, diagnosed her with an ejection fraction of 60%.  Under the Settlement Agreement, that percentage is the upper limit of what is considered a reduced ejection fraction – meaning that the heart does not optimally pump blood with each beat – and is one of the qualifying medical conditions for compensation benefits under the

---

[1] In our prior decisions, we have provided a detailed description of the Diet Drugs litigation.  *See, e.g.*, *In re Briscoe*, 448 F.3d 201, 206-08 (3d Cir. 2006); *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 147-48 (3d Cir. 2005); *In re Diet Drugs Prods. Liab. Litig.*, 385 F.3d 386, 389-92 (3d Cir. 2004); *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 225-29 (3d Cir. 2002).  We will therefore limit our discussion to the essential facts of the instant appeal.

Settlement Agreement.[2] On one of her application forms, her attesting physician, Dr. Gregory Boxberger, confirmed that she had a reduced ejection fraction in the range of 50 to 60%. Upon review, the Trust's auditing cardiologist concluded that there was no "reasonable medical basis"[3] for Dr. Boxberger's finding that Davis suffered a reduced ejection fraction in that range and instead determined the ejection fraction to be "qualitatively more than 65%." (App. at A1636.) Accordingly, the Trust denied Davis's claim.

Davis, disagreeing with that determination, submitted a Notice of Contest of Post Audit Determination, pursuant to Audit Rule 18 of the Settlement Agreement. She attached a supplemental affidavit from Dr. Boxberger as well as affidavits from three additional cardiologists, all attesting that they had interpreted the echocardiogram and agreed with Dr. Boxberger's finding that she had an ejection fraction of 50-60%. After reviewing these additional materials and comparing them to the auditing cardiologist's findings, the Trust reaffirmed its decision to deny Davis compensation benefits in a Final Post Audit Determination.

---

[2] Davis was also diagnosed with "moderate mitral regurgitation" and "pulmonary hypertension secondary to moderate or greater mitral regurgitation". The District Court disagreed with the former diagnosis, which determination Davis did not appeal, but did not reach the latter as the Trust did not contest that diagnosis. Therefore, the only medical issue on appeal is whether Davis suffered a reduced ejection fraction.

[3] Under the Settlement Agreement Audit Rules, a "reasonable medical basis" is the standard that an auditing cardiologist applies in determining the validity of a medical diagnosis serving as the basis for a claim. (App. at A1582.) *See, e.g.*, *In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d at 183-84.

Davis formally disputed the Trust's Final Post Audit Determination, and the Trust subsequently applied to the District Court to require Davis to show cause why her claim should be paid. The District Court issued a show-cause order to Davis and referred Davis's claim to a Special Master, who in turn appointed a Technical Advisor to review Davis's claim. The Technical Advisor issued a Technical Advisor Report, as required by the Settlement Agreement, on October 2, 2007. In the report, the Technical Advisor agreed with the auditing cardiologist and concluded that there was no reasonable medical basis for Dr. Boxberger's finding of a reduced ejection fraction. The show-cause record, including that report and the parties' statements of the case, was then submitted to the District Court. After reviewing the record, the District Court determined that Davis had failed to meet her burden of proving that a reasonable medical basis existed to support her claim. The District Court thus affirmed the Trust's denial of her claim. Davis timely appealed.

## II.    Discussion[4]

On appeal, Davis contends that the District Court erred in improperly relying on the opinion of the Technical Advisor to affirm the Trust's denial of her claim[5] and in

---

[4] The District Court had original jurisdiction over all terms of the Settlement Agreement under 28 U.S.C. §§ 1332 and 1407. We exercise jurisdiction over a final order of the District Court pursuant to 28 U.S.C. § 1291. "We review a District Court's exercise of its equitable authority to administer and implement a class action settlement for abuse of discretion." *In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d at 184 n.10. An abuse of discretion may be found if the District Court's decision "rest[s] on a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* (citation omitted) (internal quotation marks omitted).

4

determining that she had failed to meet her burden of demonstrating a reasonable medical basis for the attesting physician's finding of a reduced ejection fraction. We disagree with both of those contentions.

The Settlement Agreement Audit Rules permit a Special Master to assign a Technical Advisor to review the record and to prepare a report to the District Court "setting forth his/her opinions regarding the issue(s) in dispute in the audit." (App. at 1524.) The Technical Advisor also "act[s] as a sounding board for the judge – helping the jurist to educate himself in the jargon and theory disclosed by the testimony and to think through the critical technical problems." *Reilly v. United States*, 863 F.2d 149, 158 (1st Cir. 1988). A review of the District Court's Memorandum Opinion and the show-cause record demonstrates that the Court carefully considered the entire record, not just what the Technical Advisor said. Nothing here indicates a simple "rubber stamping" of the Technical Advisor's opinion.[6] (Appellant's Opening Br. at 12; App. at A3-A13.)

---

[5] The Trust contends that Davis waived this argument by not challenging the procedure for appointing a technical advisor and obtaining and relying on a technical advisor's opinion at the formation of the Settlement Agreement. Davis did not waive this argument, however, as she challenges the District Court's application of the procedures set forth in the Settlement Agreement Audit Rules and not the procedures themselves.

[6] Davis argues that the District Court "merely rubber stamped the Technical Advisor's finding that there was no 'reasonable medical basis'" for her diagnosis. (Appellant's Opening Br. at 12.) The "evidence" that Davis proffers in support of her contention is the fact that the District Court has previously adopted a technical advisor's findings concerning claims arising under the Settlement Agreement 169 out of 170 times. That lone contention highlights the problem in her argument – she cannot point to anything in the record suggesting that the Court improperly relied on the Technical Advisor *in this case*.

5

The District Court's determination was also not clearly erroneous. "The test is not what this court would have done under the same circumstances; that is not enough. The Court must feel that only one order could have been entered on the facts." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 320 (3d Cir. 2001) (quotation marks omitted) (quoting *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977)). Davis fails to show that the only conclusion that could be drawn from her echocardiogram is that she suffered from a reduced ejection fraction. As the District Court noted, she failed to rebut the opinions of the auditing cardiologist and the Technical Advisor that she did not have a reduced ejection fraction. She merely stood on her own cardiologists' affirmations, which only disagree with those findings. But disagreement, without more, does not foreclose contrary conclusions. Because Davis cannot demonstrate that the District Court's determination was clearly erroneous, her argument that she met her burden to show a reasonable medical basis for her condition must fail.[7]

---

[7] Davis proffers two additional arguments to undermine the conclusions of the auditing cardiologist and the Technical Advisor, neither of which are persuasive. First, she contends that "inter-reader variability" expands the range of measurements required to qualify for matrix benefits, although she makes that argument only in a passing reference in her opening brief and fails to develop it. (Appellant's Opening Br. at 19.) The District Court rightly concluded that, if the argument were accepted, it "would allow a claimant to recover Matrix benefits with an ejection fraction as high as 79%. This result would render meaningless this critical provision of the Settlement Agreement." (App. at A12.) Second, she argues that the Technical Advisor failed to utilize any one of three "generally accepted" methods of calculating ejection fractions. But she points to no support for her argument that one method should be preferred over another – indeed, she concedes that the Settlement Agreement does not recommend or prefer a specific method in determining ejection fractions. Furthermore, she proffers no evidence that "a different result would obtain had [her preferred method] been used." (App. at A11.)

**III.     Conclusion**

For the foregoing reasons, we will affirm.